**In the United States District Court
for the District of Kansas**

———————

Case No. 23-cv-04075-TC

———————

GLEE M. M.,[1]

*Plaintiff*

v.

MARTIN O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Plaintiff Glee M. claims that she cannot work due to debilitating anxiety and agoraphobia. She seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits and Supplemental Security Income benefits, pursuant to Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A). For the following reasons, the Commissioner's final decision is affirmed.

**I**

**A**

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and

---

[1] Plaintiff is referred to only by first name and initials to protect her privacy. *See, e.g.*, *Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, a court will "not re-weigh the evidence or try the issues de novo," but will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.*

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16 3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past

relevant work in light of his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

**B**

Plaintiff claims she is unable to work due to severe anxiety, panic attacks, and agoraphobia, along with other physical ailments. Doc. 9 at 1; *see, e.g.*, Adm. Rec. at 44–45.[2] Her disability claim was denied in June 2020. Adm. Rec. at 114. She requested a hearing, after which her claim was denied again. *Id.* at 31. Plaintiff filed an appeal in federal court and the Commissioner filed a voluntary motion to reverse and remand, which was granted. *See Myers v. Kijakazi,* No. 21-cv-2531 (D. Kan. 2022). Plaintiff's claim was heard again by an ALJ in February 2023. Adm. Rec. at 787. The ALJ issued an unfavorable decision, from which Plaintiff now appeals. Doc. 9 at 2.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability. Adm. Rec. at 790. At step two, the ALJ found that Plaintiff had the following severe impairments: "panic disorder with agoraphobia, general anxiety disorder, major depressive disorder, social anxiety, obesity, and atrial fibrillation and tachycardia with underlying hypertension and premature ventricular contractions." *Id.* He also found that she had several non-severe impairments. *Id.* at 790–91.

The ALJ proceeded to step three, where he determined that Plaintiff did not have an impairment that met or medically equaled a listing. Adm. Rec. at 791. (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). Relevant to this appeal, the ALJ found that Plaintiff's mental impairments, including her panic disorder

---

[2] Agoraphobia is characterized by "marked, or intense, fear or anxiety triggered by the real or anticipated exposure to a wide range of situations," and should only be diagnosed when a person's fear "causes clinically significant distress or impairment in social, occupational, and other important areas of functioning." Doc. 9 at n.1 (quoting the Diagnostic and Statistical Manual of Mental Disorders-5-TR); *see also Martinez v. Chater*, 70 F.3d 1269, n.3 (5th Cir. 1995).

3

with agoraphobia, did not meet or medically equal listings 12.04, 12.06, or 12.08. *Id.* at 792. The ALJ first found that Plaintiff did not satisfy the Paragraph B criteria because she was only moderately limited in all four broad areas of functioning. *Id.* at 792–94. Then the ALJ found that Plaintiff did not satisfy Paragraph C criteria as there were examples in the record that Plaintiff had achieved more than marginal adjustment. *Id.* at 794.

The ALJ then proceeded to define Plaintiff's residual functional capacity. Adm. Rec. at 794. He found that Plaintiff "could perform a full range of work" with several nonexertional limitations. *Id.*

> Specifically, she could occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. She could have occasional exposure to extreme cold and would need to avoid all unusual hazards defined in SSR 96-9p as moving mechanical parts of equipment, tools, or machinery, electrical shock, working in high exposed places, exposure to radiation, working with explosives and exposure to toxic caustic chemicals. She is able to apply common sense understanding to carry out detailed but uninvolved instructions in the performance of simple routine and repetitive tasks in a work environment free of fast-paced production requirements involving only simple work-related decisions with few, if any, workplace changes. She can have no contact with the general public but could have occasional interaction with coworkers, and frequent contact with supervisors.

*Id.* He reviewed all available medical and non-medical evidence to arrive at this determination. Id. Specifically, he discussed Plaintiff's claimed symptoms of being unable to leave her home in the context of her stated activities of daily living, including going shopping and caring for a neighbor. Id. at 794–99. He also reviewed the medical opinions and administrative medical findings of seven providers: Alyce Williams, APN; Jena Albin, PA-C; Felix Martinez-Mercado, M.D.; Courtney Graby, LCSW; Crystal Duclos, Psy.D.; Robert Blum, Ph.D.; and Edna Toubes-Klinger, M.D. He found each opinion not persuasive due to conflict with medical or other evidence. Id. at 794–801.

At step four, the ALJ determined that Plaintiff could not perform her past work as a customer service clerk or surgical tech. Adm. Rec.

at 802. He then proceeded to step five, where relying on a vocational expert, he determined that suitable work for someone with Plaintiff's age, education, experience, and RFC existed in significant numbers in the national economy. *Id.* at 802–03.

Plaintiff contends that the ALJ made three separate errors that require remand or entitle her to benefits as a matter of law. *See* Doc. 9. First, she says the ALJ erred at step three by finding that Plaintiff's severe impairments did not meet listing 12.06. *Id.* at 5–11. Second, she says the ALJ erred in failing to support his RFC determination with substantial evidence because he discounted the severity of her agoraphobia against the weight of the evidence. *Id.* at 11–24. Third, she says he erred in failing to follow the vocational expert's testimony that there would be no jobs for a person of Plaintiff's RFC if she would have more than one unexpected absence in a month. *Id.* at 25.

## II

Plaintiff has not established that the ALJ erred. Accordingly, the Commissioner's decision is affirmed.

### A

Plaintiff claims the ALJ erred at step three by finding that Plaintiff's severe impairments did not meet or medically equal listing 12.06 for anxiety and obsessive-compulsive disorders. Doc. 9 at 5–11. But the ALJ did not err.

At step three, an ALJ must determine whether a plaintiff's severe impairments alone or in combination with other impairments meet or medically equal "a condition 'listed in the appendix of the relevant disability regulation.'" *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). An impairment equals a listing only if it prevents an individual from performing any gainful activity. 20 C.F.R. § 416.925(a) (2017); *see also Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (noting that listings are to be read narrowly). If a listing matches a plaintiff's impairment, the plaintiff is presumed unable to work and it is unnecessary to proceed to the fourth step. *Id.*

The ALJ's finding that Plaintiff did not meet Listing 12.06 Paragraph B is supported by substantial evidence. Paragraph B requires that Plaintiff have at least one extreme limitation or two marked limitations

in a broad area of mental functioning. 20 C.F.R. 404, Subpt. P., App. 1 § 12.06. The ALJ found Plaintiff was only moderately limited in each of these areas, and he explained his reasoning by pointing to specific evidence in the record. Adm. Rec. at 792–94. For example, even though Plaintiff reported "brain fog," she could remember to care for herself, a neighbor, and stray cats so the ALJ found Plaintiff was only moderately limited in understanding, remembering, or applying information. *Id.* at 792. These same activities supported his conclusion that Plaintiff was only moderately limited in her ability to concentrate, persist, or maintain pace. *Id.* at 793. And he explained that "the ability to care for other people and pets is indicative of the ability to care for oneself" when he found Plaintiff was moderately limited in adapting and managing herself. *Id.* The ALJ's consideration of Plaintiff's activities was proper in this context. *Contra* Doc. 9 at 11; *see* 20 C.F.R. 404, Subpt. P., App. 1 § 12.00.F.b (noting that "Areas of mental functioning in daily activities … can help us understand whether your mental disorder limits one or more of [the paragraph B] areas"). Thus, his findings that Plaintiff did not meet Paragraph B are supported by substantial evidence.

Similarly, the ALJ's finding that Plaintiff did not meet Listing 12.06 Paragraph C was supported by substantial evidence. *Contra* Doc. 9 at 8. Paragraph C requires the ALJ to find evidence that Plaintiff has "marginal adjustment, that is, the minimal capacity to adapt to changes in [one's] environment or to demands that are not already part of [one's] daily life." 20 C.F.R. 404, Subpt. P., App. 1 § 12.06. The ALJ did not find evidence of marginal adjustment. Adm. Rec. at 794. Rather, the ALJ explained that Plaintiff had gone to the mall, a store, and dinner with a friend without a panic attack. *Id.* at 793. He also noted that neither of the state agency psychological consultants believed Plaintiff medically equaled a listing. *Id.* at 794. That is sufficient. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining that where evidence can support a conclusion either way, the ALJ's conclusion is not to be disturbed).

Finally, Plaintiff points to several facts that she says should have compelled the ALJ to find she was disabled because she met the criteria for Listing 12.06. Doc. 9 at 9–11 (pointing to Graby's opinion about Plaintiff's limitations and Plaintiff's own statements about the severity and persistence of her anxiety and panic attacks). But the ALJ discussed these facts in his opinion. Specifically, he explained that Graby's findings of marked and extreme limitations were not persuasive

because the evidence showed that Plaintiff regularly left her home and cared for others. Adm. Rec. at 800. The ALJ also noted that while Plaintiff feels "very panicky" when she leaves the house and a friend said she becomes "non-functional," she has successfully gone to the grocery store, the mall, and dinner without having a panic attack. *Id.* at 793, 801. This indicates that the ALJ was aware of and considered this evidence when he made his findings at step three that Plaintiff did not meet Listing 12.06 Paragraph B or C criteria. And even if the discussion of Plaintiff's evidence was not in the context of step three, that does not show that the ALJ erred. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 734–35 (10th Cir. 2005) (holding that where an ALJ's findings at step four and step five are sufficient to show that the claimant could not be disabled at step three, any failure to explain findings at step three is harmless and does not require remand).

**B**

Plaintiff also asserts that the ALJ erred in his RFC determination because he inappropriately discounted the severity of Plaintiff's agoraphobia, thereby erroneously concluding that she could leave her house to go to work five days a week. Doc. 9 at 13. But the ALJ's findings are adequately explained and supported by substantial evidence. *See* Adm. Rec. at 794–802, 20 C.F.R. §§ 404.1529 & 416.929.

Plaintiff first asserts that the ALJ mischaracterized the evidence before him. Doc. 9 at 14–15. Specifically, she claims he misinterpreted treatment notes from September 2021 suggesting her mental conditions were "stable" to mean "better," said she left her apartment to care for a neighbor even though the record said the neighbor came over for about an hour each day, and further claims that it was irrelevant that she was able to move from Texas to Kansas, as this was a necessity. *Id.* at 15. She also disagrees with the ALJ's assessment of her treatment, including his findings about the consistency and conservative nature of it. *Id.* at 15–16.

Plaintiff's assertions do not undermine the conclusion that the ALJ's RFC assessment was supported by substantial evidence. For example, the ALJ's finding that Plaintiff's condition improved is supported by Plaintiff's own reports that "her energy and mood had improved." Adm. Rec. at 798. And the ALJ found that Plaintiff leaves the house regularly to go grocery shopping and play outside with her grandchildren. Adm. Rec. at 796–98. He also considered Plaintiff's claims that leaving the house causes her great difficulty and so she

7

often only leaves for very short periods of time. *Id.* at 795 (noting Plaintiff says she feels "very panicky" when she's outside her home and went shopping "for not more than 30 minutes at a time"). But the ALJ found that Plaintiff's statements about the severity of her anxiety and agoraphobia were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* Moreover, even though he found Plaintiff was not as limited as she claimed, the ALJ still made concessions for Plaintiff's limitations by carefully crafting the RFC in terms of her ability to interact with others. Adm. Rec. at 798 (limiting Plaintiff to no contact with the general public). And he further supported his RFC with the finding that "[t]reatment notes often remark that the [Plaintiff] was calm and cooperative with normal speech, intact eye contact, and appropriate grooming," and that she was not in "acute distress" during these evaluations. Adm. Rec. at 798. Plaintiff's arguments essentially ask for a reconsideration of the evidence, something a federal court may not do. *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014).

Plaintiff also questions the ALJ's judgment as to the persuasiveness of medical opinions and prior administrative medical findings. She asserts, for instance, that the ALJ was mistaken in his assessment since there were "consistent medical opinions from three of plaintiff's providers" that she was chronically unable to leave her home. Doc. 9 at 22–24 (specifically noting Albin, Martinez-Mercado, and Graby). She also says that it is impossible to follow his reasoning for discrediting these three providers' consistent statements. *Id.*

That is not the case. The ALJ articulated a specific rationale for rejecting each of the seven providers' statements as not persuasive. For example, he said Albin's opinion was not persuasive because it was from June 2020 and the phrasing suggested that Albin believed Plaintiff's abilities to drive and maintain employment could improve, which was "not supportive of ongoing disability." Adm. Rec. at 799. He found Martinez-Mercado's statements that Plaintiff could not leave her home unpersuasive because there were numerous specific instances where Plaintiff did leave, including to go grocery shopping and see her grandchildren. *Id.* at 799–800. He found Graby's statements not persuasive because Graby said Plaintiff was extremely limited in her ability to interact with others and manage herself, but Plaintiff had normal memory, function, and was able to care for herself and for a neighbor. *Id.* at 800. Regarding each provider, the ALJ gave sufficient explanation

for a reasonable mind to agree with the ALJ. That is all that is required. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

And to the extent that Plaintiff's arguments can be read to suggest that the ALJ improperly employed her treatment and activities of daily living to discount her claims, that argument fails too. An ALJ may use a plaintiff's medical treatment to evaluate her statements about the intensity, persistence, and limiting effects of a symptom. *Parise v. Astrue*, 421 F. App'x 786, 789 (10th Cir. 2010). And while activities of daily living cannot be conflated with a plaintiff's ability to work, such activities can be considered when evaluating the severity of a plaintiff's claims. *Adcock v. Comm'r, SSA*, 748 F. App'x 842, 848 (10th Cir. 2018). The ALJ did not conflate Plaintiff's activities of daily living with her ability to work; on the contrary, he believed that they undermined her claim that her agoraphobia was so severe she could not leave her house for work. *See* Adm. Rec. at 797. Such an evaluation by the ALJ was proper. *See Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013); *see also Hendron v. Colvin*, 767 F.3d 951, 954–56 (10th Cir. 2014) (holding that an ALJ adequately supports his RFC determination when he thoroughly reviews the medical evidence and plaintiff's own reports of her abilities and activities); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("[The] limited scope of review precludes this court from reweighing the evidence or substituting our judgment for that of the [Commissioner].").

### C

Plaintiff also briefly contends that the ALJ erred at step five because the vocational expert testified that there would be no jobs in the national economy for someone of Plaintiff's RFC if she would miss work more than one day per month. Doc. 9 at 25 (citing Adm. Rec. at 846–47 (showing that Plaintiff's attorney, not the ALJ, posed the question about missing work)). There is no error because the ALJ did not find that Plaintiff would miss more than one day per month. *See* Adm. Rec. at 794–802. An ALJ is only obligated to consider a vocational expert's testimony regarding the limitations that he finds apply to a plaintiff, not limitations he does not find. *See Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016); *see also Putnam v. Comm'r, SSA*, 789 F. App'x 694, 700 (10th Cir. 2019) (explaining that plaintiff claimed he required unscheduled absences, but the ALJ did not find such a limitation).

### III

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

It is so ordered.

Date: August 16, 2024              \_s/ Toby Crouse_____
                                    Toby Crouse
                                    United States District Judge